CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 01 2018

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TOMMY LAWRENCE HELMS, <br> Petitioner, | ) <br> ) <br> ) | CASE NO. 7:17CV00030 |
| v. | ) <br> ) | **MEMORANDUM OPINION** |
| JOHN WALRUTH, <br> Respondent. | ) <br> ) <br> ) <br> ) | By: Hon. Michael F. Urbanski <br> Chief United States District Judge |

Tommy Lawrence Helms, a state inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his sentence on a judgment by the Henry County Circuit Court. Respondent filed a motion to dismiss Helms's § 2254 petition, and Helms responded, making the matter ripe for disposition. After review of the record, the court concludes that Helms's petition is time-barred, requiring the motion to dismiss to be granted.

I.

On May 31, 1996, the Henry County Circuit Court convicted Helms, pursuant to guilty pleas, of first-degree murder, five counts of use of a firearm in the commission of a felony, two counts of robbery, one count of attempted robbery, and one count of malicious wounding.[1] There was no plea agreement. After consideration of a presentence report, the evidence, and arguments by the prosecution and defense counsel, the court sentenced Helms

---

\* The court has omitted internal quotation marks, alterations, or citations throughout this opinion, unless otherwise noted.

[1] Helms's crime spree covered a two-month period. He was fifteen when he committed one of the robberies and use of a firearm, and he was sixteen when he committed the murder and the other crimes.

to a total aggregate sentence of life-without-parole[2] plus twenty-three years.[3]

Helms appealed, including an allegation that his sentence violated the Eighth Amendment because the trial court imposed a sentence above what was called for in Virginia's discretionary sentencing guidelines. The Court of Appeals of Virginia denied his petition, and then, on October 22, 1997, the Supreme Court of Virginia refused review. Helms never filed a petition for a writ of habeas corpus in the state court.

## II.

On January 24, 2017, Helms filed the current petition, alleging one claim: that his life-without-parole sentence violates the Eighth Amendment under the new rule announced in Montgomery v. Louisiana, 136 S. Ct. 718 (2016) and/or Miller v. Alabama, 567 U.S. 460 (2012). He requests a new sentencing hearing.

### III. Miller and Montgomery

In Miller, the United States Supreme Court ruled that the "Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" because "children are constitutionally different[4] from adults for sentencing purposes" and mandatory sentencing schemes as applied to juveniles "pose too

---

[2] In 1995, Virginia abolished parole for felony offenders. See Va. Code Ann. § 53.1–165.1 (2013).

[3] Helms received the following sentences: (1) life-without-parole for first-degree murder, (2) twenty-three years aggregate for five counts of use of a firearm in the commission of a felony to be served consecutively with the murder charge, and (3) thirty years (ten years each) for the robberies and malicious wounding, to be served concurrently with the murder sentence.

[4] "Juveniles have diminished culpability and greater prospects for reform . . . they are less deserving of the most severe punishments." Miller, 567 U.S. at 471 (quoting Graham v. Florida, 560 U.S. 48, 69 (2010)). The Court continued:
> First, children have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking. Second, children are more vulnerable . . . to negative influences and outside pressures, including from their family and peers; they have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings. And third, a child's character is not as well formed as an adult's; his traits are less fixed and his actions less likely to be evidence of irretrievable depravity.

Id.

great a risk of disproportionate punishment." 567 U.S. at 471. The Court carefully pointed out, however, that the holding did not represent a "categorical bar on life without parole for juveniles," only that mandatory schemes are unconstitutional because such schemes do not allow sentencing courts to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id. at 480.

In Montgomery, the Supreme Court clarified that Miller announced a substantive rule of constitutional law that is retroactively applicable on collateral review:

> Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity. Because Miller determined that sentencing a child to life without parole is excessive for all but the rare juvenile offender whose crime reflects irreparable corruption, it rendered life without parole an unconstitutional penalty for a class of defendants because of their status—that is, juvenile offenders whose crimes reflect the transient immaturity of youth.... Like other substantive rules, Miller is retroactive because it necessarily carries a significant risk that a defendant—here, the vast majority of juvenile offenders—faces a punishment that the law cannot impose upon him.

136 S. Ct. at 734.

## IV. Statute of Limitations

Under the applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a one-year period of limitation for federal habeas corpus runs from the latest of: "(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," or "(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(A), (C).

3

*A. Commencement Of The Statute Of Limitations Under § 2244(d)(1)(A)*

Helms's judgment became final on January 20, 1998, when the time to file for a writ of certiorari expired. Helms had one year, or until January 20, 1999, to file a federal habeas petition. See 28 U.S.C. § 2244(d)(1)(A); Sup. Ct. R. 13 ("A petition for a writ of certiorari to review a judgment in any case . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."); Clay v. United States, 537 U.S. 522, 525 (2003). Helms did not file his petition until 2017; therefore, his § 2254 is time-barred under § 2244(d)(1)(A).

*B. Belated Commencement Under § 2244(d)(1)(C)*

Helms argues that his § 2254 petition is timely under § 2244(d)(1)(C) because it was filed within one year of Montgomery.

In order to obtain a belated commencement of the limitation period under § 2244(d)(1)(C), a petitioner "must show: (1) that the Supreme Court recognized a new right; (2) that the right 'has been . . . made retroactively applicable to cases on collateral review'; and (3) that he filed his motion within one year of the date on which the Supreme Court recognized the right." United States v. Mathur, 685 F.3d 396, 398 (4th Cir. 2012) (quoting Dodd v. United States, 545 U.S. 353, 358 (2005)).[5]

However, the "limitation period runs from the date that the Supreme Court *recognizes the new right*, not the date on which the new right was made retroactive." Mathur, 685 F.3d at 398 (citing Dodd, 545 U.S. at 357-58); see also Dodd, 545 U.S. at 358 (quoting 28 U.S.C.

---

[5] Mathur, and Dodd both discussed 28 U.S.C. § 2255(f)(3), which sets out the rules for writs of habeas corpus for federal convictions. The provisions of § 2255(f)(3) and § 2244(d)(1)(C) are functionally identical. Compare 28 U.S.C. § 2244(d)(1)(C) ("The limitation period shall run from the latest of . . . the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.") with 28 U.S.C. § 2255(f)(3) ("The limitation period shall run from the latest of . . . the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively available to cases on collateral review.").

4

§ 2255(f)(3)) (The federal habeas limitations period is reset on *"one date and one date only . . .* 'the date on which the right asserted was initially recognized by the Supreme Court.'"). Furthermore, despite a "potential for harsh results," the Dodd Court ruled that, "an applicant who files a second or successive motion seeking to take advantage of a new rule of constitutional law *will be time barred except in the rare case* in which this Court announces a new rule of constitutional law and makes it retroactive within one year." Dodd, 545 U.S. at 359 (emphasis added).

"In general . . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." Teague v. Lane, 489 U.S. 288, 301 (1989). In Miller, the Supreme Court proclaimed that all mandatory life-without-parole sentences for juvenile offenders violated the Eighth Amendment. 567 U.S. at 471. Montgomery, however, did not break new ground or impose a new obligation; instead, the decision merely clarified that "Miller announced a substantive rule that is retroactive in cases on collateral review." Montgomery, 736 S. Ct. at 725, 732 ("In the wake of Miller, the question has arisen whether its holding is retroactive to juvenile offenders whose convictions and sentences were final when Miller was decided . . . . Certiorari was granted in this case to resolve the question."); see also In re Phillips, 879 F.3d 542 (4th Cir. 2018) (Phillips filed a § 2254 within one year of Miller, which was denied. In 2016, he requested authorization from the Fourth Circuit to file a successive petition based on Montgomery.[6] Citing Dodd, the Fourth Circuit denied his successive habeas application, holding that he "presented" his

---

[6] Phillips originally sought authorization to file a second or successive habeas application under Graham, Miller, and LeBlanc v. Mathena, 841 F.3d 256 (4th Cir. 2016) rev'd, LeBlanc v. Virginia, 137 S. Ct. 1726 (2017). However, after the Supreme Court reversed LeBlanc, Phillips relied exclusively on Miller's retroactive application.

5

Miller claim in his initial petition, even though the Supreme Court had not yet ruled that Miller was retroactively applicable on collateral appeal.).

Therefore, under § 2244(d)(1)(C), Helms had one year from Miller, or until June 25, 2013, to file his federal habeas petition. See, e.g., Thomas v. Clarke, 2017 WL 4544675 (E.D. Va. Oct. 11, 2017), appeal docketed, No. 17-7415 (4th Cir. Oct. 24, 2017) (dismissing the § 2254 petition as untimely because Montgomery did not establish a new rule; Miller announced the right that the petitioner relied upon); Young v. Biter, 2016 WL 4770027 (C.D. Cal. Sept. 12, 2016) (same); Gray v. Dorethy, 2017 WL 4263985, at *3 (N.D. Ill. Sept. 26, 2017) (same); Williams v. Miles, 2017 WL 4180154, at *4 (D. Minn. June 22, 2017) (same); Mendez v. Ryan, 2017 WL 5514192, at *4 (D. Ariz. Oct. 18, 2017) (same).

Alternatively, Helms asserts that his petition is timely because Montgomery announced a watershed rule of criminal procedure. Under Teague, "to qualify as watershed, a new rule must meet two requirements. First, the rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction. Second, the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." Whorton v. Bockting, 549 U.S. 406, 418 (2007). Montgomery cannot qualify as a watershed rule because the decision did not impose any additional procedural requirement beyond Miller, address the accuracy[7] of the juvenile offender's underlying conviction, or alter the understanding of bedrock procedural elements.[8]

Helms relies upon the right initially recognized in Miller, and he did not file his §

---

[7] Montgomery affects sentencing protocol, not the accuracy of the underlying conviction.

[8] "[T]he second Teague exception is so tight that very few new rules will ever squeeze through it." Howard v. United States, 374 F.3d 1068, 1080 (11th Cir. 2004).

6

2254 before June 25, 2013; and Montgomery did not announce a watershed rule of criminal procedure; therefore, his habeas petition is time-barred under § 2244(d)(1).

*C. Equitable Tolling*

Lastly, Helms avers that the AEDPA's statute of limitations should be equitably tolled.

"Congress enacted the AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and to further the principles of comity, finality, and federalism." Woodford v. Garceau, 538 U.S. 202, 206 (2003). However, the AEDPA statute of limitations "does not set forth an inflexible rule requiring dismissal whenever its clock has run." Holland v. Florida, 560 U.S. 631, 645 (2010) (quoting Day v. McDonough, 547 U.S. 198, 208 (2006)).

A petitioner is entitled to equitable tolling if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (quoting Pace v. DiGuglielmo, 544, U.S. 408, 418 (2005)). In general:

> Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those *rare instances* where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (emphasis added); see also Finch v. Miller, 491 F.3d 424, 427-28 (8th Cir. 2007) (holding that "equitable tolling is an exceedingly

7

narrow window of relief").

Helms's argument fails for several reasons.

First, the uncertainty of Miller's applicability and/or retroactivity cannot, by itself, be the basis of equitable tolling. See Whiteside v. United States, 775 F.3d 180, 185-86 (4th Cir. 2014) (quoting Mintner v. Beck, 230 F.3d 663, 666 (4th Cir. 2000)) ("Equitable tolling thus may not be applied where, as here, the only impediment to timely filing was the discouragement felt by petitioner when calculating his odds of success."); see also Menominee Indian Tribe of Wis. v. United States, 764 F.3d 51, 61-62 (D.C. Cir. 2014) (holding that "[t]he general rule . . . is that legal decisions based on unclear or contrary precedent justify equitable tolling in only the rarest instances"). A litigant "cannot toll or suspend the running of the statute [of limitations] by relying upon the uncertainties of controlling law. It is incumbent upon him to test his right and remedy in the available forums." See Commc'ns Vending Corp. of Ariz. V. FCC, 365 F.3d 1064, 1075 (D.C. Cir. 2004) (quoting Fiesel v. Bd. of Ed. Of New York, 675 F.2d 522, 524 (2d Cir. 1982)) ("The only sure way to determine whether a suit can be maintained is to try it.").

Helms has not demonstrated that legal uncertainty made filing a petition appear so futile as to represent the "rarest" of instances justifying equitable tolling because many other prisoners successfully presented his current argument within Miller's limitations period.

Second, Helms's pro se status, his education level, and his lack of knowledge of the law are not extraordinary circumstances that justify equitable tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) ("Ignorance of the law is not a basis for equitable tolling."); Rouse v. Lee, 339 F.3d 238, 246-47 (4th Cir. 2003) (holding that a petitioner's

8

statutory misinterpretation and health issues, short of incapacitation or incompetence, did not warrant equitable tolling); Smith v. McGinnis, 208 F.3d 13, 18 (2d Cir. 2000) (Petitioner's "pro se status . . . does not merit equitable tolling.").

Third, Helms alleges that he feared that filing a petition before courts addressed Miller's retroactivity would have gambled away his "one chance" at federal habeas review. However, his contention is incorrect. Regardless of whether Helms had filed a previous § 2254, he would have been statutorily authorized to file an additional petition under § 2244(d)(1)(C) if Montgomery had recognized a new constitutional right.

Therefore, Helms fails to show that he is entitled to equitable tolling of the AEDPA's statute of limitations because he has not demonstrated that he diligently pursued his rights, or that extraordinary, external circumstances prevented his timely filing.

## V.

For the reasons stated, the court **GRANTS** the motion to dismiss. Helms's petition is time-barred. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Helms and to counsel of record for Respondent. Further, finding that petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability is **DENIED**.

ENTER: This 1st day of February, 2018.

/s/ Michael F. Urbanski

Chief United States District Judge